# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FEDERAL DEPOSIT INSURANCE  :
CORPORATION, in its      :
Capacity as Receiver of     :
CONNECTICUT BANK OF COMMERCE, :
  Plaintiff,        :
             :
v.            :  CIVIL ACTION NO.
             :  3:06-cv-00091 (VLB)
GREAT AMERICAN INSURANCE   :
COMPANY,        :
  Defendant.       :  February 13, 2009

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. # 99]

  This is an action for damages for breach of an insurance contract. The Federal Deposit Insurance Corporation (FDIC), in its capacity as receiver of Connecticut Bank of Commerce (CBC), brought this action to recover on a fidelity bond issued by Great American Insurance Company (GAIC). The Court has federal question jurisdiction over all cases to which the FDIC is a party. 12 U.S.C. § 1819. Venue is proper in this Court as CBC was domiciled in Connecticut and the fidelity bond was issued in Connecticut. GAIC has filed the within motion for summary judgment arguing that there is no disputed issue of material fact as to misrepresentations made by CBC in its application for insurance, entitling GAIC to rescission as a matter of law. [Doc. #99] For the reasons hereinafter set forth, the Court GRANTS summary judgment in favor of GAIC.

## Facts

  Examination of the exhibits attached to the motion for summary judgment and responses thereto disclose the following undisputed material facts. Randolph

Lenz was the majority shareholder and Chairman of the Board of CBC. In 1999, while CBC had assets of approximately $89 million, it entered into a Purchase and Assumption Agreement to acquire MTB Bank, a New York bank with approximately $299 million in assets. CBC purchased "substantially all" of MTB's assets, including its factoring unit. [Doc. #93, Ex. 4] This transaction required the approval of the FDIC, which approval MTB sought on August 4, 1999.

In September of 1999, MTB management discovered that one or more of its agents had advanced $950,000 based on fraudulent invoices under a factoring agreement with Harmony Designs, Inc. MTB submitted a claim for indemnity under its fidelity bond (also referred to as a "blanket banker's bond") issued by Lloyd's of London ("Lloyd's"), its insurance carrier of 15 years.

On February 5, 2000, the FDIC approved the CBC's acquisition of MTB, subject to CDC's infusion of $20 million of new capital into MTB. Lenz agreed to infuse the additional capital from his own personal assets.

In March 2000, CBC made a series of loans totaling approximately $20 million to individuals and entities who then loaned the funds to Lenz, who was working with CBC President Don Weand to raise the required new capital. Lenz reused the proceeds of these loans to purchase CBC stock, the proceeds of which were then used to purchase MTB (the "straw loan scheme").

In March 2000, the president and several other officers of MTB were indicted in a conspiracy involving the importation of Argentinian minerals. MTB again submitted a claim to Lloyd's for its losses relating to the conduct resulting in the

indictments. On March 31, 2000, the Purchase and Assumption Agreement was finalized. CBC was added to MTB's insurance policy with Lloyd's.

The Lloyd's insurance policy was scheduled to expire by its terms on June 30, 2000. In April 2000, CBC began seeking renewal of the policy. Lloyd's expressed concern about the two claims that MTB had made, and refused to issue a new policy or extend coverage without a visit by CBC representatives to Lloyds' headquarters in London. Thereafter, CBC employed the services of an insurance broker to replace the Lloyd's policy. [Doc. #111, Ex. 24]

CBC's Chief Financial Officer, Barbara Van Bergen, filled out an application for insurance from CBC's insurance broker.  Although the application was from Reliance Insurance, CBC knew that it would be submitted to multiple insurers to obtain quotes for insurance. The application contained the following questions: "[Does CBC have] any knowledge of or information concerning any occurrence or circumstance whatsoever which might materially affect [this insurance proposal]?"; "Has any insurance of this nature been declined or cancelled during the past three years?"; "List all losses sustained during the past three years, whether reimbursed or not." Van Bergen answered "No," "No," and "None," respectively. [Doc #100, Ex. 24] The application contained the statement, "[t]he Applicant represents that the information furnished in this application is complete, true, and correct. Any misrepresentation, omission, concealment, or incorrect statement, in this application or otherwise, shall be grounds for recision of any bond issued in reliance upon such information." Id. Van Bergen signed the

3

application form on behalf of CBC on June 19, 2000 and gave it to CBC's insurance broker for submission to multiple insurers. On June 30, 2000, CBC's insurance broker submitted the Reliance application to GAIC.

On July 19, 2000, GAIC issued a fidelity bond to CBC. The bond was effective retroactively to June 30, 2000. The bond states that it is issued "in reliance upon all statements made and information furnished to the Underwriter by the Insured in applying for this bond" and "[t]he Insured represents that the information furnished in the application for this bond is complete, true and correct. Such application constitutes part of the bond. Any misrepresentation, omission, concealment or any incorrect statement of a material fact, in the application or otherwise, shall be grounds for the rescission of this bond." [Doc # 100, Ex. 28]

On June 26, 2002, CBC went into FDIC receivership. On January 18, 2006, the FDIC brought this suit alleging that GAIC breached its contractual duty by dishonoring the claim for coverage under the fidelity bond for losses sustained by CBC relating to the loans issued to fund Lenz' capital contribution required for the CBC acquisition of MTB and other transactions overseen by MTB and then CBC employee David Clapman.

GAIC has moved for summary judgment on the grounds that it had properly rescinded the fidelity bond due to omissions and misstatements made by CBC in its application for the fidelity bond.

4

<u>Discussion</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." <u>Huminski v. Corsones</u>, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." <u>Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH</u>, 446 F.3d 313, 315 (2d Cir. 2006). "The moving party bears the burden of showing that he or she is entitled to summary judgment." <u>Huminski</u>, 396 F.3d at 69. "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." <u>Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.</u>, 302 F.3d 83, 91 (2d Cir. 2002).

GAIC argues that it is entitled to summary judgment on the FDIC's breach of contract claims because it properly rescinded the fidelity bond in accordance with its clear and express terms. Specifically, it argues that four misrepresentations in the

Reliance application constitute grounds under the terms of the fidelity bond for rescinding the fidelity bond. The FDIC argues two points in response. First, it argues that 12 U.S.C. § 1823(e) bars GAIC from asserting a defense of misrepresentation against the FDIC's enforcement of the fidelity bond. Second, the FDIC argues that there is an issue of material fact as to whether CBC made misrepresentations in its application.

### The Application of 12 U.S.C. § 1823(e)

The FDIC argues that 12 U.S.C. § 1823(e) bars consideration of the Reliance application in determining whether GAIC breached the fidelity bond contract. The statute provides in relevant part, "No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it . . . shall be valid against the Corporation unless such agreement" fulfills four requirements of authentication by the acquired institution. The parties do not dispute that by itself the Reliance application does not fulfill the four requirements of authentication. The FDIC argues that allowing misrepresentations in the Reliance application to bar recovery under the fidelity bond would impermissibly diminish the FDIC's interest in the fidelity bond application, as the Board of Directors of CBC did not approve the statements made in the fidelity bond application. GAIC argues that a fidelity bond should not be considered an "asset" under the terms of 12 U.S.C. § 1823(e). It further argues that the Reliance application is not a separate "agreement" under the terms of 12 U.S.C. § 1823(e) but part of the "asset" that the FDIC seeks to recover on.

6

The issue presents a case of first impression within the Second Circuit. The FDIC cites <u>FDIC v. Oldenburg</u>, 34 F.3d 1529 (10th Cir. 1994) for the proposition that fidelity bonds are "assets" under the terms of 12 U.S.C. § 1823(e). GAIC, in turn, cites <u>FDIC v. Aetna Casualty & Surety Co.</u>, 947 F.2d 196 (6th Cir. 1991), which found to the contrary. As the Second Circuit has not yet expressed an opinion on this precise issue, the Court looks to its other decisions regarding 12 U.S.C. § 1823(e) for guidance. In <u>Inn at Saratoga Associates v. FDIC</u>, 60 F.3d 78 (2d Cir. 1995), the court held that an "asset" was "everything which can be made available for the payment of debts" but noted that a "conditional promise of a future loan" would "bend the term 'asset' beyond recognition." <u>Id.</u> at 82. The Second Circuit went on to hold that though the "asset" at issue in that case might not be subject to 12 U.S.C. § 1823(e), it was subject to the equitable common law "D'Oench Duhme" doctrine, adopted in <u>D'Oench, Duhme & Co. v. FDIC</u>, 315 U.S. 447 (1942), which barred the enforcement against the FDIC of secret agreements which would tend to deceive regulators.

The FDIC has not argued that the D'Oench Duhme doctrine applies in this case, perhaps because several Circuits have called its validity into doubt in light of other Supreme Court decisions on the status of the federal common law. <u>See FDIC v. Deglau</u>, 207 F.3d 153 (3d Cir. 2000). If the D'Oench Duhme doctrine is discarded, then the equitable inquiry into whether enforcement of an agreement would deceive bank regulators is less important than the determination of whether the subject of the action is an "asset" for purposes of 12 U.S.C. § 1823(e) analysis.

The Second Circuit's construction of an "asset" not subject to 12 U.S.C. §

7

1823(e) in <u>Inn at Saratoga</u>, <u>supra</u>, is more analogous to the Sixth Circuit's description in <u>Aetna</u>, <u>supra</u>, of fidelity bonds as "a conditional promise to pay an uncertain sum of money that is payable only upon the occurrence of an uncertain condition"[1] than the Tenth Circuit's ends-driven reasoning that fidelity bonds should be swept into the statute to promote "stability and confidence with respect to the nation's banking system." <u>FDIC v. Oldenburg</u>,  34 F.3d at 1554. This view is shared by several Circuits. <u>John v. Resolution Trust Corp</u>., 39 F.3d 773, 776 (7th Cir. 1994) (12 U.S.C. § 1823(e) applies only to "conventional loan activities," not non-banking sales); <u>E.I. DuPont de Nemours and Co. v. FDIC</u>, 32 F.3d 592, 597 (D.C. Cir. 1994) (funds held in escrow for payment of depositor's invoices not assets); <u>Thigpen v. Sparks</u>, 983 F.2d 644 (5th Cir. 1994) (12 U.S.C. § 1823(e) only applies to "assets" acquired in the course of ordinary banking activities).

12 U.S.C. § 1823(e) is intended in insure that the FDIC can rely on a bank's books in determining its solvency.  That objective is not advanced by the inclusion of fidelity bonds within its ambits. A fidelity bond is not reported to the FDIC or the Office of the Comptroller of Currency (OCC) as a financial asset of a banking institution.  For instance, Form FFIEC 031, an annual report which CBC would have been required to submit to the FDIC and OCC under 12 U.S.C. § 324, contains prompts for the reporting bank to list all of its banking assets and liabilities. However, there is no entry in which a fidelity bond would be listed, as opposed to other hard-to-value assets, such as letters of credit, which are listed.

---

[1] 947 F.3d at 205.

While promoting transparency in the nation's banking system and maximizing taxpayer recovery in bank receiverships is a worthy goal, the Court is not convinced that Congress intended to abrogate the rights of commercial entities to enter into and to be bound by the clear and unambiguous language of their contracts, which would be the consequence of including fidelity bonds issued in reliance on material misrepresentations within the definition of an "asset" covered by 12 U.S.C. § 1823(e). Such a construction would severely hamper all but the most sound FDIC-insured institutions' ability to operate, as insurers would be unwilling to contract with any institution which could conceivably be taken into receivership. Such an interpretation would undermine the banking system which the FDIC exists to foster. The Court's decision is not conditional upon this point, though, as even if the fidelity bond were examined within the bounds of 12 U.S.C. § 1823(e), there is ample precedent for considering the defenses raised by the bond itself concerning the application which would bar recovery by the FDIC.

GAIC argues that even when 12 U.S.C. § 1823(e) bars consideration of extrinsic documents, those defenses which are "bilateral" or appear on the face of the asset are still enforceable against the FDIC. While the Second Circuit has not addressed the issue, the First, Seventh, and Eleventh Circuits have all enforced defenses stated on the face of the asset the FDIC holds, reasoning that when FDIC has notice of a defense through the terms of a contract it relies on, 12 U.S.C. §

1823(e) is inapplicable, as it was intended to bar only secret defenses.[2] Though the Court invited it to submit additional briefing on this subject, [Doc. #123] the FDIC has not advanced any argument why this Court should not adopt this reasoning. The purpose of 12 U.S.C. § 1823(e) is to allow the FDIC to rely on the official records of an institution in regulating and insuring its deposits. Dimuzio v. Resolution Trust Corp., 68 F.3d 777, 780 (3d Cir. 1995). However, if insurance companies were allowed no defense to payment under their policies, no matter the malfeasance involved in procuring them, the FDIC would soon find itself the only remaining insurer of troubled financial institutions. The application for insurance is an integral part of and is incorporated by reference in the rescission clause of the policy. The policy is expressly made in reliance and contingent upon the accuracy and completeness of the application. To disallow the provision would be to erase protections written into contracts between sophisticated commercial entities, undermining the ability of insurance companies to rely on their own contracts. Therefore, the Court will enforce the defenses stated upon the face of the bond.

The bond itself states, "[a]ny misrepresentation, omission, concealment or any incorrect statement of a material fact, in the application or otherwise, shall be grounds for the rescission of this bond." The FDIC argues that "the application" must be read to refer only to GAIC's own application, which was not filled out until

---

[2]See, e.g., FDIC v. Panelfab Puerto Rico, Inc., 739 F.2d 26, 30 (1st Cir. 1984); Howell v. Continental Credit Corp., 655 F.2d 743, 746 (7th Cir. 1981); Fed. Sav. & Loan Ins. Corp. v. Two Rivers Associates, 880 F.2d 1267 (11th Cir. 1989) (enforcing defenses to payment which appear on subject asset).

after coverage was bound, and not the Reliance application. It then argues that GAIC could not rely on misrepresentations in its own application, because that application was not before GAIC at the time it decided to bind coverage. This Catch-22 is unavailing for several reasons. First, the fidelity bond referred to "misrepresentation . . . in the application *or otherwise*." (Emphasis added). It is undisputed that the Reliance application was sent to GAIC by CBC's agent, on CBC's behalf, for GAIC's consideration. Second, although the GAIC application was not sent until after coverage was bound, there is no reason that such coverage could not be revoked because of a material misrepresentation made later, especially since the submission of the GAIC application and CBC's financial statements was made a requirement at the time that coverage was bound. Not to submit the application would have been a breach of the contract. To do as the FDIC urges, and not consider any misrepresentations in the Reliance application or GAIC's own application, would effectively erase the rescission clause from the fidelity bond.

The FDIC further argues that the Reliance application cannot be considered part of the fidelity bond because there is no privity between GAIC and Reliance. However, the evidence shows that CBC filled out one application to be submitted by CBC's insurance broker to multiple insurers. Examination of the GAIC application submitted by CBC to GAIC after GAIC bound coverage shows that the two applications are substantially similar, and further, that CBC made the same answers in both applications. As CBC's agent submitted the Reliance application on CBC's behalf to GAIC for the purpose of applying for insurance from GAIC,

11

GAIC was entitled to treat it as the "information furnished to the Underwriter by the Insured in applying for this bond" under the terms of the bond. It is undisputed that the Reliance application was the only information CBC submitted to GAIC in support of its application for the GAIC fidelity bond at issue. The Reliance application, irrespective of the letterhead on which the substance appears, is thus incorporated by reference into the fidelity bond, as the "information furnished" and as the "application" itself. To rule otherwise would place form over substance, obviating reality.

Finally, the FDIC argues that if the Court considers misrepresentations in the Reliance application as grounds for rescission, it should apply the Connecticut common law standard for rescission, and not the standard contained in the bond and application. In the two cases cited by the FDIC, <u>Corn v. Protective Life Ins. Co.</u>, 1998 U.S. Dist LEXIS 1283, 3:95-cv-556 (D. Conn. February 4, 1998) and <u>Sherman v. Prudential Ins. Co. Of America</u>, 2002 Conn. Super. LEXIS 737, CV990078688S (Conn. Super. Ct., March 6, 2002), the courts interpreted the contractual language at issue through the lens of Connecticut precedent, but gave full effect to the bargained-for language. This Court shall do the same. As per the bond language, "[a]ny misrepresentation, omission, concealment or any incorrect statement of a material fact, in the application or otherwise, shall be grounds for the rescission of this bond." Under Connecticut law, a "misrepresentation" is one "known by the insured to be false when made" though not necessarily with conscious intent to defraud. <u>Middlesex Mutual Ins. Co. v. Walsh</u>, 218 Conn. 681, 692 (Conn. 1991). However, an insured has an affirmative duty to "inform himself

12

of the content of the application signed by him, under penalty of being bound by the representations recorded therein" if an agent fills out the application. <u>Pinette v. Assurance Co. Of America</u>, 52 F.3d 407 (2d Cir. 1995) (reviewing Connecticut law). A "material fact" is one that would "influence the parties in making the contract . . . matters made the subject of special inquiry are deemed conclusively material." <u>State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co.</u>, 109 Conn. 67, 70-71 (Conn. 1929). A fact is material if it "it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of the premium." <u>Pinette</u>, 52 F.3d at 411.

<u>Grounds for Rescission</u>

GAIC argues that CBC made four material misrepresentations in its application. First, it argues that CBC should have disclosed that it suffered a loss of $950,000 on fraudulent invoices presented by Harmony Designs, Inc. to MTB. Second, it argues that CBC should have disclosed the indictments of several officers of MTB. Third, it argues that CBC should have disclosed that Lloyd's of London had declined to renew its insurance coverage. Finally, it argues that CBC should have disclosed Mr. Lenz' improper loan scheme in connection with the MTB purchase and assumption agreement. These claims shall be addressed in turn.

a. The Harmony Designs Claim

GAIC argues that in response to the prompt in the Reliance application to list any losses, whether reimbursed or not, in the last three years, CBC should have listed the Harmony loss. CBC acknowledges that MTB filled a claim with

13

Lloyd's in June 1999 for the loss of the money advanced based on fraudulent invoices, but argues that 1) MTB's loss is not imputed to CBC, and 2) that the loss was not material to CBC's application. This argument fails for several reasons. First, though CBC disputes the characterization of its Purchase and Assumption Agreement with MTB as a merger, it is undisputed that CBC purchased MTB's factoring business. MTB's factoring business was a part of CBC at the time that CBC applied for insurance. The loss belonged to CBC, and as it was CBC that later collected "several hundred thousand dollars" from Harmony Designs in recovery for the factoring loss, it cannot be disputed that CBC had replaced MTB as the injured party. [Doc. #104, p. 15 n. 4] Second, the second count of the FDIC's claim against GAIC concerns the fraud allegedly committed by David Clapman, a former MTB employee in the factoring division, who allegedly accepted fraudulent invoices. Materiality, in the context of Connecticut insurance law, is defined as "when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of the premium." Pinette v. Assurance Co. of America, 52 F.3d at 411. The prior acceptance of fraudulent invoices by a MTB employee must demonstrate the risk that a former MTB employee in the same division would accept fraudulent invoices in the future. "Common sense tells us that an applicant's prior loss history is material to a reasonable insurance company's decision whether to insure that applicant or determination of the premium." Pinette, 52 F.3d at 411. Therefore, the failure to disclose that MTB employees had accepted fraudulent invoices was a material

14

misrepresentation.

### b. MTB Officer Indictments

GAIC argues that CBC should have disclosed that John Bartholomew, the president of MTB, and several other officers of MTB were indicted in a conspiracy involving the importation of Argentinian metals in March 2000. The FDIC argues that these indictments were not material to CBC's application for insurance because the subject area of the indictments covered part of MTB's business not purchased by CBC.

After the Purchase and Assumption transaction, the resulting entity named CBC was more than two-thirds MTB assets. Even if Bartholomew himself was no longer working for the resulting entity, as he had been charged with customs fraud, wire fraud, and money laundering, GAIC should have been able to assess for itself whether a culture of corruption existed at the newly constituted CBC. A fidelity bond protects a company against the fraud of its employees. The application requested disclosure of any and all information which could conceivably affect its underwriting of the CBC risk.  Specifically, it broadly requests "*any* knowledge of or information concerning *any* occurrence or circumstance *whatsoever* which *might* materially *affect*"(emphasis added) the insurance proposal. The scope of the information sought is clearly designed to enable GAIC to assess the risk it is being asked to insure, a critical task it was unable to perform to due CBC's misrepresentations. The prior fraud of the officers of a company substantially and very recently subsumed into the insurance applicant is material to the risk of future fraud in the applicant. Therefore, the

15

failure to disclose the indictments of MTB officers for fraud was a material misrepresentation.

### c. Lloyd's of London Insurance Renewal

GAIC next argues that CBC should have disclosed that Lloyd's of London had refused to renew the expiring fidelity bond insurance. The FDIC argues that the circumstances amounted to a "non-renewal" of CBC's fidelity bond coverage, and that the answer to the question, "[h]as any insurance of this nature been declined or cancelled during the past three years?" was correctly stated as "no." It is undisputed that CBC sought to extend its coverage with Lloyd's of London, and that Lloyd's of London would not do so. Lloyd's stated that it would not renew the coverage "given [MTB's] current claim circumstances as well as the break up of the MTB entity." [Doc. #111, Ex. 23] The FDIC argues that the only reason that CBC could not procure insurance with Lloyd's of London was that it was unwilling to send its insurance agent to London to meet with Lloyd's at its headquarters, but this is not material to CBC's answer. The FDIC's attempts to parse the language of the application to exclude inquiry into whether CBC's past insurance carrier considered CBC a bad risk is unavailing. As CBC's prior insurance carrier, Lloyd's of London was in the best position to know the risk of future claims. The specific inquiry into other carriers' assessment of CBC's risk is conclusively deemed material. State Bank & Trust Co., 109 Conn. at 70-71 (matters of special inquiry conclusively deemed material). The disclosure of Lloyd's decision not to renew their policy would have alerted GAIC to the need to acquire more information and would have likely led to the discovery of the claims made on Lloyd's bond. That

16

discovery would have also disclosed CBC's lack of candor in answering other questions posed.  This information would invariably affect GAIC's underwriting. Therefore, the failure to disclose the non-renewal, or declination, of insurance coverage is a material misrepresentation.

### d. Lenz' Straw Loan Scheme

Finally, GAIC argues that CBC knew and should have disclosed that Lenz and CBC President Don Weand had begun a straw loan scheme to satisfy the FDIC's requirement for new capital at CBC before its purchase and assumption of MTB. The FDIC argues that CBC cannot be charged with knowledge of the conduct of its agents Lenz and Weand, as they were acting adversely to its interests by avoiding Lenz' duty to provide $20 million of his own funds in support of CBC in excess of his current investment.

The rule in Connecticut is that principals are deemed to receive and have the benefit of their agent's knowledge contemporaneously with the agent's actions, except when 1) it is not the duty of the agent to disclose, 2) the agent is acting adversely to the principal, or 3) the agent is acting in fraud of the principal. Reider v. Arthur Andersen, LLP, 784 A.2d 464, 470 (Conn.Super. 2001). There is an exception to the rule that a principal is not imputed with knowledge of an agent's fraud where the principal later seeks to enjoy the fruits of his agent's fraud, as by attempting to ratify an insurance policy procured by an employee who has defrauded the company. Davis-Scofield v. Agricultural Ins. Co., 145 A. 38 (Conn. 1929). However, there is no evidence in the record that Van Bergen or Allocca, the agents who prepared the applications for the fidelity bond, had any knowledge of

17

Lenz and Weand's fraud when they executed the applications. Therefore, the Court must determine whether Lenz and Weand were acting adversely to CBC to determine whether CBC is charged with knowledge of their actions. Lenz pled guilty to misapplication of bank funds,18 U.S.C. § 656, an element of which is that "the defendant intended to injure the bank, in that, among other things, the natural effect of his actions was to put the Bank at a substantial risk of loss, whether or not the Bank ultimately suffered loss." [Doc. #93, Ex. 3] However, this plea covered only loans made to a single company totaling $1.3 million. Lenz and Weand have invoked their Fifth Amendment right to refuse to testify, and there is no other evidence in the record, which is richly developed as to the nature of the loans themselves, from which the Court can draw any conclusion as to Lenz and Weand's motivations in concealing the other $18.7 million in straw loans. GAIC argues that the loans, while fraudulent, were made with the intent to deceive the FDIC and evade an "impediment to regulatory approval," but to ultimately advance CBC's interests by securing the purchase and assumption of MTB. [Doc. #93, Ex. 8]. It further argues that it is unreasonable to conclude that Lenz intended to harm a company in which he had invested millions of dollars and was the 93.5% shareholder. The FDIC argues that Lenz had the intent to harm CBC by denying it needed capitalization, saving himself $20 million, and avoiding his personal obligations. Drawing inferences in favor of the FDIC as the non-moving party on GAIC's motion for summary judgment, the Court concludes that there is a disputed issue of material fact as to whether Lenz and Weand believed that they were acting adversely to CBC's interests in executing the straw loan scheme.

Therefore, the Court cannot conclude that CBC's failure to include mention of Lenz' and Weand's fraud in its application for insurance is a material misrepresentation by CBC, as it cannot conclude that CBC knowingly failed to disclose its agents' fraud in its application for insurance.

<u>Conclusion</u>

Therefore, the Court finds that there is no contested issue of material fact that CBC made material misrepresentations as to the Harmony claim, the Lloyd's of London fidelity bond, and the indictments of the MTB officers. Any one of these misrepresentations would entitle GAIC to rescind the fidelity bond. GAIC's motion for summary judgment is GRANTED and the Clerk is directed to close the file.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  February 13, 2009.

19